(935 P.2d 1086)

No. 73,344

KIMBERLY R. COX, *Appellant*, v. PAUL LESKO, M.D., *Appellee.*

Opinion filed April 18, 1997.

*Gerard C. Scott*, of Prochaska & Scott, of Wichita, for appellant.

*Lee H. Woodard, James Z. Hernandez*, and *Jerry D. Rank*, of Woodard, Blaylock, Hernandez, Roth & Day, of Wichita, and *Martin W. Bauer*, of Martin, Pringle, Oliver, Wallace & Swartz, L.L.P., of Wichita, for appellee.

Before ROYSE, P.J., GERNON, J., and ROBERT G. JONES, District Judge, assigned.

GERNON, J.: Kimberly R. Cox appeals from a jury verdict in favor of Dr. Paul Lesko in a medical malpractice action.

The jury found 70% of the fault attributable to Cox and 30% attributable to Dr. Lesko. Cox contends on appeal that the trial court erred in allowing the jury to consider her failure to attend physical therapy as evidence of comparative fault. She also argues that the trial court erred in limiting the cross-examination of one of Dr. Lesko's expert witnesses.

After suffering a shoulder injury at work, Cox was referred to Dr. Lesko, who diagnosed her as suffering from traumatic posterior subluxation in the left shoulder. Dr. Lesko performed surgery to repair Cox's shoulder in January 1991.

One of the issues at trial was Cox's attendance, or lack thereof, at physical therapy sessions following the surgery. Cox was instructed to attend physical therapy three times per week. However, from April 10 to June 6, 1991, she only met with a physical therapist three times. Over the next several months, she continued to miss the majority of her physical therapy sessions. Several doctors testified that physical therapy was essential for rehabilitation.

Cox argues that the trial court erred in instructing the jury on comparative fault. She maintains that the failure to attend some of the physical therapy sessions is relevant to the issue of mitigation of damages rather than comparative fault. She further contends that there was insufficient evidence to support the instruction. We agree.

During the jury instructions conference, Cox objected to any instructions on comparative fault. Cox argued the real issue was a failure to mitigate damages and not comparative fault. She maintained that once Dr. Lesko committed the negligent act of surgery, everything that happened subsequently did not contribute to the negligence but, instead, to the failure to mitigate damages. The court overruled the objection and instructed the jury that Dr. Lesko claimed Cox was at fault for failing to follow his instructions and for not complying with the physical therapy treatments and appointments.

Cox argues that any fault on the patient's part which is subsequent to a doctor's fault and merely aggravates an injury caused by the doctor only affects the amount of damages the patient is to recover and is not to be used as a comparative fault matter. Cox cites numerous cases, including *Blair v. Eblen*, 461 S.W.2d 370, 372 (Ky. 1970), and *Halverson v. Zimmerman*, 60 N.D. 113, 119, 232 N.W. 754 (1930), to support her assertion. In short, she maintains that her failure to attend some of the physical therapy sessions only affects the amount of damages she is entitled to recover and, therefore, it was reversible error for the trial court to instruct the jury on comparative negligence.

Dr. Lesko argues that a patient's negligence which contributes to the harm or injury does not have to occur concurrent with the doctor's negligence before comparative fault principles apply. He

primarily relies upon *Wisker v. Hart*, 244 Kan. 36, 766 P.2d 168 (1988).

In *Wisker*, Wisker was injured in a three-wheel motorcycle accident and subsequently was examined by Dr. Hart. Dr. Hart diagnosed him as suffering from a fractured rib that had punctured his liver, causing internal bleeding. After the examination did not reveal any further internal bleeding, Dr. Hart concluded that the injury had stabilized. Another doctor, Dr. Davis, instructed Wisker not to perform any strenuous activities or work or lift anything over 15 pounds because rebleeding could occur. Both doctors told Wisker to contact them if his condition changed. Despite these instructions, Wisker returned to work and reinjured himself. Wisker immediately experienced discomfort and left work. When Wisker arrived home, he was visibly in distress but refused to contact a doctor. He later collapsed and died from internal bleeding.

Wisker's wife sued the treating physicians, alleging their negligence caused Wisker's death. The jury was instructed on comparative fault and returned a verdict finding 60% of the fault was attributable to Wisker and 40% was due to medical malpractice. On appeal, the Supreme Court held that sufficient evidence was present to support the verdict. It noted that Wisker had disregarded the advice of his physicians by engaging in strenuous physical labor after suffering a serious injury. The court also noted that Wisker's failure to seek medical attention after being instructed to do so if his condition changed had a significant impact on his chance of survival. 244 Kan. at 40-41.

Dr. Lesko's reliance upon *Wisker* is misplaced. In *Wisker*, the event which caused Wisker's eventual death and which precipitated the lawsuit was Wisker's failure to heed the advice of physicians. Therefore, the jury concluded that the death could hardly have been attributed to any active negligence on behalf of the defendant physicians which was more than 50 percent of the cause of death. In addition, in *Wisker*, there is no reference to any attempt to have the issue framed in terms of mitigation of damages. Therefore, that issue was not addressed by the Kansas Supreme Court.

It has been stated that "a patient's failure to follow instructions does not defeat an action for malpractice where the alleged im-

proper professional treatment occurred prior to the patient's own negligence." 61 Am. Jur. 2d, Physicians, Surgeons, Etc. § 303, p. 451. See *LeMons v. Regents of University of California*, 21 Cal. 3d 869, 148 Cal. Rptr. 355, 582 P.2d 946 (1978); *Dunn v. Catholic Med. Center of Brooklyn & Queens*, 55 App. Div. 2d 597, 389 N.Y.S.2d 123 (1976); *Heller v. Medine*, 50 App. Div. 2d 831, 377 N.Y.S.2d 100 (1975).

22 Am. Jur. 2d, Damages § 497, pp. 580-81, states in part:

> "The doctrine of avoidable consequences is to be distinguished from the doctrine of contributory negligence. Generally, the consequences of contributory negligence and avoidable consequences occur—if at all—at different times. Contributory negligence occurs either before or at the time of the wrongful act or omission of the defendant. On the other hand, the avoidable consequences generally arise after the wrongful act of the defendant. Damages may flow from the wrongful act or omission of the defendant, and if some of those damages could reasonably have been avoided by the plaintiff, then the doctrine of avoidable consequences prevents the avoidable damages from being added to the amount of damages recoverable."

The doctrine of avoidable consequences applies to the situation we have before us. The wrongful act was allegedly committed by Dr. Lesko, either with the diagnosis and treatment before or at the time of surgery on Cox's shoulder. Any damage alleged occurred at those times. We conclude that Cox's failure to attend physical therapy, under the facts stated here, was not an issue of comparative fault, but was rather a consideration on the issue of mitigation of damages—whether she could have mitigated the consequences of Dr. Lesko's alleged negligence by attending physical therapy.

This matter is reversed and remanded for a new trial based on the trial court's allowance of Cox's failure to attend physical therapy to be considered as having a causal relation to her injuries and the giving of a comparative fault instruction.

Cox next argues that the trial court erred in unduly restricting her from cross-examining Dr. Lesko's expert, Dr. Rockwood, on his preferred method of treatment. Given our ruling above, this issue is moot. However, we will address this issue in the interest of avoiding a further appeal if the question arises upon remand.

Cox claims the testimony she wanted to elicit from Dr. Rockwood was relevant in establishing the standard of care in treating the type of injury she sustained. Dr. Lesko contends that Cox failed to preserve this issue on appeal because she did not raise an objection when Dr. Rockwood's evidentiary deposition was presented to the jury. Dr. Lesko further claims that the trial court properly excluded the testimony because an expert's personal method of treatment is irrelevant to the standard of care.

Unfortunately, Cox has failed to designate a record on appeal sufficient to establish the claimed error. Neither the transcript of the hearing on the motion in limine regarding this matter, nor the testimony from Dr. Rockwood's discovery deposition which addressed his preferred method of treatment, is included in the record on appeal. See *McCubbin v. Walker*, 256 Kan. 276, 295, 886 P.2d 790 (1994).

In any event, *Karrigan v. Nazareth Convent & Academy, Inc.*, 212 Kan. 44, 510 P.2d 190 (1973), is directly on point to the issue raised by Cox. In *Karrigan*, the plaintiff brought a medical malpractice action based, in part, on the physician's post-operative care and introduced another doctor, who testified concerning how the second doctor attended to his patients after surgery. The court held the doctor's testimony on his personal method of treatment was insufficient to establish the accepted norms of reasonable care. The court noted that "[g]enerally, '[e]vidence is not admissible to show what another would have done under the circumstances, or that he would have treated the patient in some other way, or to show how the defendant's treatment of like cases differed from that of other physicians.' [Citations omitted.]" 212 Kan. at 50.

Kansas courts have recognized that the practice of medicine is not an exact science and, in most instances, there is more than one acceptable approach to treatment. The mere fact that one doctor prefers one method over another does not, by itself, mean that approach is better or preferable to the other. See *Delaney v. Cade*, 255 Kan. 199, 219, 873 P.2d 175 (1994) (noting this distinction when applying the theory of loss of chance for a better recovery in medical malpractice cases).

To allow Cox to cross-examine Dr. Rockwood on how he preferred to treat these types of shoulder injuries would unduly emphasize one approach over another and was not relevant in determining whether Dr. Lesko deviated from the appropriate standard of care.

Affirmed in part, reversed in part, and remanded.