No. 73,344

K<small>IMBERLY</small> R. C<small>OX</small>, *Appellant,* v. P<small>AUL</small> L<small>ESKO</small>, M.D., *Appellee.*
(953 P.2d 1033)

Opinion filed January 30, 1998.

*Gerard C. Scott*, of Prochaska & Scott, of Wichita, argued the cause and was on the briefs for appellant.

*Lee H. Woodward*, of Woodard, Blaylock, Hernandez, Roth & Day, of Wichita, argued the cause, and *James Z. Hernandez* and *Jerry D. Rank*, of the same firm, and *Martin W. Bauer*, of Martin, Pringle, Oliver, Wallace, & Swartz, L.L.P., of Wichita, were with him on the briefs for appellee.

The opinion of the court was delivered by

LARSON, J.: This medical malpractice case raises questions of whether a patient's failure to perform physical therapy prescribed by a physician may be utilized in comparing fault or can only be considered in mitigation of damages.

Kimberly R. Cox sued Paul Lesko, M.D., alleging his negligent treatment of her shoulder injury resulted in permanent disability. Evidence showed Cox failed to perform physical therapy prescribed by Dr. Lesko. The trial court instructed the jury on failure to mitigate damages but also allowed the jury to compare the fault of Cox and Dr. Lesko.

Cox was denied any recovery when the jury found her 70% at fault and Dr. Lesko 30% at fault. Cox appealed. The Court of Appeals held the trial court erred in allowing the jury to consider Cox's failure to attend physical therapy as evidence of comparative fault. *Cox v. Lesko,* 23 Kan. App. 2d 794, 935 P.2d 1086 (1997). A new trial was ordered. We granted Dr. Lesko's petition for review.

The result we reach is fact-driven, so we set forth the known facts and the controverted testimony and medical opinions given in considerable detail.

*Factual background*

On November 30, 1990, Cox injured her left shoulder while at work by lifting a heavy, awkward object over her head. She was referred to Dr. Lesko, who first examined her on December 4, 1990. Cox failed to inform Dr. Lesko that about 10 years previously she had experienced left shoulder problems to the extent that surgery had been recommended. Based on the medical history Cox provided and his physical examination, Dr. Lesko diagnosed Cox

as suffering a traumatic posterior subluxation in the left shoulder. A traumatic posterior subluxation occurs when a significant injury causes a shoulder joint to partially dislocate towards the back of the body.

Dr. Lesko immobilized Cox's shoulder in a spica cast to prevent it from continuing to sublux and further injuring the shoulder. On December 20, 1990, following complaints of pain, he replaced the cast with a type of sling called a gunslinger. Dr. Lesko testified he told Cox to wear the sling unless she was bathing or performing the strength exercises that he had instructed her to do. Cox did not recall Dr. Lesko telling her to perform any exercises at this time. The doctor's notes do not refer to these instructions.

On January 4, 1991, Cox informed Dr. Lesko her shoulder had again popped out of place while she was bathing. Within the next 4 days she experienced two more instances where her shoulder had slipped out of its socket. Dr. Lesko concluded physical therapy would not effectively treat Cox's injury because the shoulder was too unstable and she was experiencing a significant and unusual amount of pain.

On January 18, 1991, Dr. Lesko performed a posterior repair and glenoid osteotomy on Cox's shoulder. In essence, Dr. Lesko tightened the shoulder socket and then inserted a bone wedge into the ball of the shoulder to keep the shoulder in place. Dr. Lesko also repaired a tear in Cox's glenoid labrum, which had not been revealed on an MRI of Cox's shoulder. The tear would not have healed if it had not been repaired and may have been the source of Cox's pain. After the surgery, Cox's shoulder was kept immobilized in another gunslinger for 6 weeks.

On March 8, 1991, Cox was instructed to start physical therapy in order to strengthen the muscles and increase her shoulder's range of motion. Although Dr. Lesko prescribed physical therapy three times per week, Cox did not return to her physical therapist until April 10, 1991, and from then to June 6, 1991, Cox only met with the therapist three times. Over the next several months, Cox continued to miss the majority of her physical therapy sessions.

By October 1991, Cox's shoulder was showing signs of instability, and Dr. Lesko recommended another surgery. Cox subsequently

sought other medical advice. She was examined at various times by Dr. Harry Morris, Dr. Kenneth Jansson, and Dr. Mary Lynch. These doctors referred Cox to Dr. Charles Rockwood, a recognized authority in the field, for consultation and advice. All of these doctors diagnosed her shoulder as suffering from a multidirectional instability. Although Cox was placed on a rigorous physical therapy program, therapists indicated that Cox continued to lack consistency, and her condition failed to improve.

In July 1993, Dr. Morris recommended an additional surgical procedure be performed on Cox which, if successful, he opined, would reduce Cox's disability to 0%-5%. Dr. Morris estimated the chances of the surgery succeeding to be 50%, although Dr. Rockwood later estimated the chances of success would be 85%-90%.

This action was filed on August 31, 1993, alleging negligence in diagnosing and treating the injury. Cox alleged she was actually suffering from a congenital multidirectional laxity of her shoulder and the doctor's failure to properly diagnose and treat this condition caused past and future medical care and expense, loss of income, disability, and pain and suffering. Dr. Lesko denied he was negligent and maintained Cox either caused or contributed to the alleged injuries by failing to follow his instructions and by failing to attend the physical therapy appointments.

At trial, several doctors testified that the standard of care for either posterior or multidirectional instability is to first perform physical therapy. Dr. Lynch and Dr. Michael Skyhar, one of Cox's nontreating experts, testified that Dr. Lesko's method of treatment was a deviation from this standard of care because Cox should have experienced physical therapy and nonoperative treatment before surgery. Dr. Lynch primarily attributed Cox's failure to heal to her prolonged period of immobilization resulting in muscle atrophy, as well as to damage necessarily done during the shoulder operation. Contrary testimony, however, indicated muscle atrophy is rarely permanent and the surgery caused no deformation which would have prevented Cox's shoulder from healing.

Dr. Lesko acknowledged therapy was generally pursued prior to surgery, but contended a deviation was necessary in this case because Cox was in extreme pain and her shoulder was too unstable

for therapy to be effective. He also testified Cox's failure to follow through with physical therapy lengthened her rehabilitation and prevented her shoulder from strengthening and tightening up.

Dr. Lesko presented the expert testimony of Dr. Rockwood and Dr. John Albright. Both doctors opined that Dr. Lesko's treatment and approach were within the acceptable standard of care. Dr. Albright testified that Dr. Lesko's working diagnosis was within the appropriate standard of medical practice.

Dr. Rockwood testified that Dr. Lesko's treatment did not interfere with his subsequent efforts to rehabilitate Cox and would not hamper future treatment efforts. He stated Cox's condition could be attributed to her failure to perform the prescribed exercises or to the congenital laxity in her shoulder capsule. Dr. Rockwood doubted Cox's immobilization prior to and following surgery had led to further instability.

Cox acknowledged missing several physical therapy sessions, but claimed to have performed her designated exercises at home or at the gym. Several doctors testified that physical therapy was essential for rehabilitation. Even Cox's experts noted it was important for a patient to perform physical therapy because the failure to comply with therapy could affect the patient's results. Dr. Lynch acknowledged there is a window of opportunity in which the failure to perform rehabilitation will affect the end result. Dr. Morris, however, opined the physical therapy appointments Cox missed were relatively few and did not have an adverse effect.

Several doctors testified shoulder laxity improves with age, as a shoulder naturally tightens up as a person grows older.

The court, over objection, instructed the jury on comparative fault of both Dr. Lesko and Cox and also instructed on mitigation of damages. As we previously stated, the jury attributed 30% of the fault to Dr. Lesko and 70% of the fault to Cox.

On appeal, the Court of Appeals held a patient's failure to follow instructions does not defeat an action for malpractice if the alleged improper treatment occurred prior to the patient's misconduct. The panel specifically found that Cox's failure to attend physical therapy was not an issue of comparative fault but could only be

considered when deciding mitigation of damages. The petition for review we granted was limited to these questions.

Cox did not seek review of the Court of Appeals' ruling that the trial court did not unduly restrict her cross-examination of Dr. Rockwood as to his preferred method of treatment. This issue was not dispositive but was answered by the Court of Appeals should it resurface in the retrial. The panel opined a doctor's testimony as to his or her personal method of treatment is insufficient to establish the accepted standard of care. Additionally, the Court of Appeals held Cox had failed to designate an adequate record for this issue to be considered. For these reasons, this portion of the Court of Appeals' opinion is not before us on review.

*In a medical malpractice case where the patient seeks damages for the doctor's failure to properly diagnose and treat a preexisting condition, may the patient's failure to follow the physician's instructions constitute comparative fault or is the failure merely evidence to be considered in mitigation of damages?*

Cox makes two allegations as to the trial court's error in giving an instruction on comparative fault. First, she contends "there was simply no evidence to support it." Second, Cox claims even if there was evidence to support the instruction, the failure to attend physical therapy after the alleged improper treatment had already occurred cannot, as a matter of law, be used to substantiate a finding of fault by an injured patient.

In considering whether a jury has been properly instructed in a civil trial, we have held: "A party is entitled to an instruction explaining its theory of the case where there is evidence to support it." *Guillan v. Watts,* 249 Kan. 606, 617, 822 P.2d 582 (1991). We have further said: "Jury instructions are to be considered together and read as a whole, without isolating any one instruction." *Cerretti v. Flint Hills Rural Electric Co-op. Ass'n,* 251 Kan. 347, 355, 837 P.2d 330 (1992).

Even though the evidence supports the giving of an instruction, such an instruction must accurately and fairly state the law as applied to the facts of the case. This is a question of law, and we have

unlimited review over such matters. See *KPERS v. Reimer & Koger Assocs., Inc.*, 262 Kan. 635, 643, 941 P.2d 1321 (1997).

The basis for this appeal results from the objection made by Cox's counsel at the jury instruction conference when he stated:

"MR. SCOTT: I have an objection to the Court's inclusion of my client on the verdict form as a party whose fault can be compared. I think that what we're really talking about here is the failure to mitigate damages and not fault. Everything that happens—once Dr. Lesko commits his negligent act of surgery, everything my client does after that point doesn't contribute to the negligence but, instead, may be a failure to mitigate damages. So I have an objection to her inclusion in fault."

Although the specific wording of the instructions are not directly in issue, we set forth the following instructions given by the trial court for a better understanding of issues in this appeal:

### "INSTRUCTION NO. 6.

. . . .

"The defendant claims that Kimberly Cox was at fault in the following respects:
"a. Failing to follow physician's instructions;
"b. Failing to comply with physical therapy treatments and appointments.

. . . .

"Defendant further claims that the plaintiff failed to mitigate her injuries and damages.

"The plaintiff denies that she was at fault, denies that she caused or contributed to her condition, and generally denies all the defendant's claims.

"The defendant has the burden to prove his claims are more probably true than not true."

### "INSTRUCTION NO. 13.

"A physician has the right to expect a patient to follow reasonable advice. The failure of a patient to accept reasonable treatment or follow advice does not relieve the doctor from the results of an earlier malpractice. It only absolves him from liability for any increased injury caused by the patient's failure to accept reasonable treatment and advice."

### "INSTRUCTION NO. 20.

"If you find that the plaintiff is entitled to recover damages for injury to her person, in fixing the amount thereof you should not include any loss which plaintiff could have prevented by reasonable care and diligence exercised by her after the loss occurred.

"However, to the extent that you consider plaintiff to have been at fault for failing to follow her physician's instructions or to comply with physical therapy

treatments and appointments, you should not also consider such failure as failure to mitigate her loss."

We answer Cox's first contention fairly simply and easily. There was clearly evidence that Dr. Lesko prescribed physical therapy post-operatively which Cox rarely attended. He designated specific exercises to be performed and had direct contact with the physical therapist as to the nature and extent of the therapy to be utilized.

We make this determination by a review of the evidence in the light most favorable to Dr. Lesko. This is because in *Pizel v. Whalen*, 252 Kan. 384, 388, 845 P.2d 37 (1993), we said: "Where the question is whether or not contributory negligence should be submitted to the jury as opposed to being dropped from the issues in the case, it follows that the evidence must be considered in the light most favorable to the defendant asserting same as a defense." The same rule applies to comparative negligence.

The importance of physical therapy was shown by the testimony of Dr. Rockwood, who said immobilization following surgery would not affect Cox's ability to regain stabilization of her shoulder if she performed her physical therapy and adhered to her rehabilitation program.

Dr. Lynch, who testified on behalf of Cox, testified on cross-examination as follows:

"Q. The rehabilitation of patients and their willingness to do the rehab program is very important in their recovery.
"A. That's correct.
. . . .
"Q. Now, is it a principle within rehab treatment that the missing of appointments or the failure to keep consistency in the train[ing] of your muscle affects the eventual outcome of that patient?
A. That's correct.
"Q. So if the patient, where that window of opportunity exists, doesn't do the rehab, its going to affect what the end result is, isn't it Doctor?
"A. Yes."

Most of the contentions made by either party in this case were subject to contrary evidence presented by the other. The experts who testified had different opinions. The nature and extent plus the location of the therapy which Cox did or did not perform was

at issue. There was clearly evidence before the jury on the issue of the reasons for therapy, the nature and time of the therapy prescribed, and the manner utilized by Cox. The resolution of these issues was for the jury, but Cox's contention that "there was simply no evidence to support it" is without merit.

The more difficult question is the overriding one of whether it was proper for the jury to be instructed that Cox's alleged fault could be compared to Dr. Lesko's alleged fault.

Our first task in evaluating this issue is to ascertain the injuries for which Cox sought to recover. Dr. Lesko had no involvement in the existence of Cox's congenital or otherwise established shoulder instability. This existed prior to the time Dr. Lesko began treatment and was not caused by any of his actions. The injury for which Cox sought to recover damages was Dr. Lesko's failure to properly evaluate, treat, and cure her preexisting condition which she presented to him at the time of his initial examination.

This distinction is important because it indicates that Cox did not suffer an injury at one distinct point in time. Rather, she had no actionable injury or damages against Dr. Lesko until her shoulder failed to heal. This distinction was not recognized by the Court of Appeals when it stated: "The wrongful act was allegedly committed by Dr. Lesko, either with the diagnosis and treatment before or at the time of surgery on Cox's shoulder. Any damage alleged occurred at those times." 23 Kan. App. 2d at 797. This statement is inaccurate because although Dr. Lesko may have committed negligent acts in his diagnosis and treatment, these acts may not have resulted in any injury or damages if Cox's shoulder had proceeded to heal.

Although all decisions are of necessity limited to the facts upon which they are based, Dr. Lesko argues that under the Court of Appeals' decision, a patient's failure to follow instructions could never constitute comparative fault if such failure occurred after the physician's negligence. Thus, once a jury found any negligence on a physician's part, liability would have to exist even though a complete recovery would have resulted had the patient followed the instructions given or properly participated in the healing process. Dr. Lesko argues this would make a negligent physician liable for

the entire injury even though the patient's own fault was one of the principal causes of the injury.

This is claimed to be contrary to the doctrine of proximate cause—that there can be more than one cause of an injury and that issues of causation are normally properly decided by a jury. See *Trapp v. Standard Oil Co.*, 176 Kan. 39, 42, 269 P.2d 469 (1954).

Dr. Lesko further contends the Court of Appeals' ruling is contrary to the concept of comparative fault. See *Cerretti v. Flint Hills Rural Electric Coop Ass'n*, 251 Kan. at 371. (comparative fault statute imposes individual liability for damages based on proportionate fault of all parties to the occurrence which gave rise to injuries and damages).

Cox argues that unnecessary surgery was performed, resulting in physical and economic damage by itself. She argues that regardless of how she recovered after the surgery, damages were fixed once the negligent surgery was performed.

Additionally, Cox suggests that even if we were to adopt a rule which would allow the plaintiff's conduct in failing to attend physical therapy to be comparative fault, it should be limited only to those items of damage where it may have bearing. Cox relies on *Allman v. Holleman*, 233 Kan. 781, 667 P.2d 296 (1983), where we found a plaintiff's taking of birth control pills was not comparative fault in an action for wrongful death even though taking the birth control pills might have caused some of the same symptoms for which the decedent had sought treatment.

With these contentions in mind, we look to whether the evidence presented here allows the comparison of fault under K.S.A. 60-258a or whether the alleged failure of Cox to make reasonable attempts at rehabilitation subsequent to the surgery only relates to mitigation of damages, which the Court of Appeals deemed to be the doctrine of avoidable consequences.

In reaching this conclusion, the Court of Appeals quoted and relied upon a statement in 22 Am. Jur. 2d, Damages § 497, pp. 580-81, which described the relationship of avoidable consequences to contributory and comparative negligence and indicated that avoidable consequences arise after the wrongful act on the

part of a defendant, while contributory negligence occurs either before or at the time of the wrongful act of the defendant.

Due to our adoption of comparative fault, the wording of the paragraph following the one quoted by the Court of Appeals is more applicable to our situation. It states:

"Otherwise stated, if the act of the injured party does not operate in causing the injury from which all damages ensued, but merely adds to the resulting damages, its only effect is to prevent the recovery of those damages which reasonable care would have prevented. However, if a statute provides that contributory negligence only diminishes the damages in proportion to the negligence attributable to the plaintiff, the results of the doctrines of contributory negligence and avoidable consequences are the same. Thus, it has been said that the unreasonable failure to mitigate consequential damages is 'fault' which can be apportioned under a state's comparative fault statute." 22 Am. Jur. 2d, Damages § 497, pp. 581-82.

Thus, when evidence was admitted to show that Cox's negligence in failing to attend therapy and follow instructions contributed to the failure of her shoulder to stabilize, her "fault" was subject to being compared. This of necessity requires the jury to be permitted to consider whether Cox's actions were a causal factor in her injury.

That part of 61 Am. Jur. 2d, Physicians, Surgeons, Etc. § 303, p. 451, relied upon by the Court of Appeals for Syl. ¶ 1, which states: "[A] patient's failure to follow a doctor's instructions does not defeat an action for malpractice where the alleged improper professional treatment occurred prior to the patient's own conduct," seems intended to relate only to jurisdictions where any contributory negligence is a complete bar to recovery. Although this is obviously no longer the case in Kansas, the 61 Am. Jur. 2d, Physicians, Surgeons, Etc. § 303, provision continues on to say: "Likewise, the patient's refusal of the suggested treatment has been held to excuse the physician from liability for malpractice, where the failure to take such treatment was a concurring cause of the injury for which recovery was sought."

The section of Am. Jur. 2d relied on by the Court of Appeals implies that the injury has been fully determined and resulted only from the alleged improper treatment prior to the time the patient fails to follow instructions. In our situation, however, there was evidence that the instructions were an integral part of the treat-

ment offered and that the actionable injury did not arise until later. It should be pointed out that concurrent does not necessarily mean concurrent in time, but rather may be concurrent in the cause of the injury, a distinction that becomes significant when we later discuss whether Dr. Lesko's actions and those of Cox occur concurrently to produce her ultimate injury.

All of the above statements from Am. Jur. 2d seem to be couched in terms of contributory negligence being a complete bar to recovery and should not become authority for any decision we now reach involving the application of comparative fault, which has been the law in Kansas since July 1, 1974. It is possible to find isolated statements out of the legal encyclopedias to justify the Court of Appeals' result, but the analysis of any such statement is colored by the stated references to contributory negligence. It is only where the direct reference is to comparative negligence that credence should be given.

If the holding of the Court of Appeals is the correct law of Kansas, it is suggested to us that we wrongly decided *Wisker v. Hart*, 244 Kan. 36, 766 P.2d 168 (1988). The issues we consider here are not identical to those set forth in the *Wisker* opinion, but they have sufficient similaries to require examination.

Wisker had been injured in a motorcycle accident and was subsequently examined by Dr. Hart, who diagnosed a punctured liver causing internal bleeding. When Wisker was released, he was advised not to perform strenuous activities and to seek medical attention if his condition changed. Despite these instructions, Wisker returned to work and later that week reinjured himself. He left work pale, weak, and bent over in distress, but did not seek medical attention until about 3 hours later. He died from internal bleeding the following day after several unsuccessful surgeries.

Wisker's heirs sued his physician, the hospital, and his employer. We determined the verdict was not contrary to the evidence after the jury had been instructed to compare the fault of the parties and attributed 60% of the fault to Wisker and 40% to health care providers. Our opinion stated:

"After suffering a serious injury, decedent ignored the advice of his physicians and engaged in strenuous physical labor. Such activity resulted in a dramatic de-

toriation of his condition, yet he failed to seek immediate medical attention as directed to do if such occurred. Instead, decedent went home. Three hours later he collapsed. The time so lost was critical and greatly reduced his chance of surviving." 244 Kan. at 40-41.

If the rule set forth in the isolated statement from 61 Am. Jur. 2d, Physicians, Surgeons, Etc. § 303, which was adopted by the Court of Appeals, had been applied, then Wisker's negligence should not have been compared when deciding upon fault, as his failure to follow the physician's instructions apparently occurred subsequent to the alleged improper medical treatment. Our upholding of the verdict in *Wisker*, which compared the fault of the patient, indicates we have recognized the principle that when a patient's negligence concurs in the cause of the injury, which may not have arisen but for that negligence, then the patient's negligence may be considered when determining fault. This was applied in *Wisker* in that his death may have been avoided, despite the prior negligent acts of the physicians in the failure to properly diagnose and treat his condition, if he only had followed instructions. Wisker's own negligence concurred in causing his death, the injury for which his survivors sought recovery.

The Court of Appeals sought to distinguish *Wisker* on the grounds that "the event which caused Wisker's eventual death and which precipitated the lawsuit was Wisker's failure to heed the advice of physicians." 23 Kan. App. 2d at 796. However, evidence in the present case could equally support the statement: "The event which caused Cox's shoulder to not heal and which precipitated the lawsuit was Cox's failure to heed the advice of her physicians and engage in physical therapy." *Wisker* is not clearly distinguishable.

Cox also cited *George v. Shannon*, 92 Kan. 801, 142 Pac. 967 (1914), which is not really applicable to this case and only holds that the discharge of a physician by a patient after believing he was injured by the physician's negligence is not evidence of the patient's negligence. More logically, it shows the patient's good sense.

It is not helpful or instructive to commence any analysis of the myriad of cases from other jurisdictions, for some involve contributory negligence as a complete bar and seemed designed to alle-

viate its harsh results. Some involve comparative negligence with different statutory underpinnings than our Kansas law. All involve different facts, and it is not really possible to compare failure to disclose proper history, failure to seek timely treatment, failure to remain in the hospital, refusing to submit to reasonable treatment, and application of the doctrine of the particularly susceptible victim to the issue we have here of alleged failure to follow reasonably prescribed therapy, which was an essential part of the healing process and critical to the patient's obtaining the optimum recovery. For examples, however, see 1 Louisell & Williams, Medical Malpractice ¶ 9.03 (1997); 2 Zaremski & Goldstein, Medical and Hospital Negligence § 32.22 (1995); Harney, Medical Malpractice §§ 24.1-24.7 (3d ed. 1993); Comment, *Defense of Patient's Contribution to Fault in Medical Malpractice Actions*, 25 Creighton L. Rev. 665 (1992); Annots., 50 A.L.R.2d 1043; 100 A.L.R.3d 723; 33 A.L.R.4th 790.

This case in the final analysis is fact-sensitive and must be guided by principles of causation and damages as reflected in Kansas tort law. Those principles were clearly expressed in *Durflinger v. Artiles*, 234 Kan. 484, 488, 673 P.2d 86 (1983):

> "Negligence exists where there is a duty owed by one person to another and a breach of that duty occurs. Further, if recovery is to be had for such negligence, the injured party must show: (1) a causal connection between the duty breached and the injury received; and (2) he or she was damaged by the negligence. [Citation omitted.] . . . Further, whether there is a causal connection between the breached duty and the injuries sustained is also a question of fact. [Citation omitted.]"

Our comparative negligence statute "requires a weighing of the causal negligence, if any, of all parties whose conduct brought about the harm, and the consequent imposition of individual liability for damages based upon the proportionate fault of each party to the occurrence." *Arredondo v. Duckwall Stores, Inc.*, 227 Kan. 842, 844-45, 610 P.2d 1107 (1980); see K.S.A. 60-258a.

In addition, Kansas does not require that negligent acts occur simultaneously in order to be causally related. This is best stated in PIK Civ. 3d 104.02:

"There may be more than one cause of an injury; that is, there may be concurrent causes, occurring independently or together, which combine to produce the injury. . . .

"Concurrent causes do not always occur simultaneously. One cause may be continuous in operation and join with another cause occurring at a later time."

Dr. Lesko correctly points out this principle has been applied in numerous cases. See, *e.g.*, *Lenhart v. Owens*, 211 Kan. 534, 507 P.2d 318 (1973) (faulty brake manufacture concurring with negligent driving to cause plaintiff's damages); *Neiswender v. Shawnee County Comm'rs*, 151 Kan. 574, 577, 101 P.2d 226 (1940) (negligent driving and defective guardrail both combined to be the proximate cause of injury); *Pinson v. Young*, 100 Kan. 452, 455, 164 Pac. 1102 (1917) (negligent dynamite storage and fire both proximately caused Pinson's death). In *Acock v. Kansas City Power & Light Co.*, 135 Kan. 389, 398, 10 P.2d 877 (1932), we found both parties negligent and declared: "While it is true that one succeeded the other in time, they are necessarily related and interwoven, and the death of Acock was the result of the concurrent negligence of both appellants."

Thus, because evidence existed to indicate Cox's conduct helped to bring about the harm, despite the fact that the negligent acts did not occur simultaneously, the comparative negligence statute applies. Under these circumstances, the jury was properly allowed to determine the factual questions regarding the causal connection between the negligence of the parties.

In the present case, evidence in the record did indicate Cox may have healed despite Dr. Lesko's alleged malpractice if she had performed her physical therapy. This presented a fact question as to whether Cox's failure to attend therapy resulted in the failure of her shoulder to heal. There was almost no evidence that Dr. Lesko's surgery prevented Cox's shoulder from healing, although there was evidence the surgery may have been ineffectual and the immobilization may have contributed to muscle atrophy. However, when considering such evidence, it must be borne in mind that other testimony indicated that the surgery may have helped stabilize the shoulder, that a tear of Cox's glenoid labrum was repaired during the surgery that otherwise would not have healed, and that

the period of immobilization could not have resulted in Cox's condition. These are precisely the type of factual differences which juries are uniquely qualified to resolve.

The jury was properly instructed, as the instructions set forth earlier so show. Furthermore, instruction No. 13 fairly established the factors the jury was to utilize in balancing the actions of both Cox and Dr. Lesko.

Although Cox does not explicitly so complain in her brief, she argued to us at oral argument that the jury was not instructed on the proper relationship between comparative fault and mitigation of damages. Instruction No. 20 shows this contention to be without merit, for the instruction states the separate nature of the concepts and forbids a double reduction. In this case, a double reduction could not have occurred because the jury never reached the question as to the amount of damages.

We understand but cannot adopt Cox's fall-back argument that we should allow a jury to compare negligence for some of the claimed damages but not others, as is alluded to in *Allman v. Holleman*, 233 Kan. at 786. We have no statutory basis for such a piecemeal determination of litigation, nor does our civil code compel us to return to a time when endless special questions were often required. We have a proven system, and it does not require we separate out each of the alleged damage items for comparison with the negligence of both parties. This is also contrary to Instruction No. 8 given in this case, which states: "It is not necessary that each of you agree upon the specific negligent act so long as the requisite number of jurors agree the party was causally negligent." See PIK Civ. 3d 106.01 (agreement as to which specific negligent act or omission is not required).

If such a rule is to be instituted, it must be done so legislatively, as we are satisfied with the manner in which juries are presently instructed. It would be unduly cumbersome and highly confusing for the jury to consider each alleged item of damages separately for comparative negligence purposes, and we refuse to adopt Cox's suggestion that we should do so.

The jury was properly instructed. Sufficient evidence, although controverted, existed to justify the comparison of the fault of Cox

and Dr. Lesko. The jury performed its assigned function and resolved the necessary issues. There was no reversible error.

The judgment of the Court of Appeals reversing in part the district court and remanding for a new trial is reversed. The judgment of the Court of Appeals on the evidentiary issue is not properly before us and is therefore affirmed. The judgment of the trial court is affirmed.

LOCKETT, J., not participating

RICHARD W. WAHL, Senior Judge, assigned.